Arguments not to exceed 15 minutes per side. Mr. Bardish, you may proceed for the appellant. Thank you. Good afternoon, Your Honors. Good afternoon. We are here today on the matter of United States v. Jermaine Clark, and the issue that's really before the court today is whether or not the two-point enhancement for reckless flight and a six-point enhancement for reckless flight causing injury applied to all three counts in an armed robbery case was appropriate under the circumstances when there was a time difference of essentially one month between the first robbery and the final robbery, which each robbery happened about two weeks between the two of them. The analysis and the controlling case here that we're relying upon is United States v. Sutherland and United States v. Dial. However, I will address most of my analysis with regards to United States v. Sutherland because I believe it is the closest factual similarity to our present case. Sutherland essentially establishes a five-factor rule that the court has considered when applying the enhancements that are in debate today. There are five factors. However, the only factor that we have here in question is the fifth factor, which is the nexus factor, which actually governs the defendant's state of mind. Why did he flee? What crime was he fleeing for? In this case, it is our position that the district court impermissibly essentially applied the eight levels worth of enhancements to counts one and counts two and count three when the enhancements only should have been applied to count three or the pseudo count. Which is what I'll refer to as the Mason, Ohio robbery. The facts of the matter have essentially been outlined in the case. However, it is our position, using the same analysis that was used in Sutherland, is that hitting Mr. Clark with the eight-level enhancements for the Chase Bank robbery in Lansing and hitting him again for the eight-point enhancement for the PNC Bank in Kalamazoo was improper because the requisite nexus between those two bank robberies, which happened a month prior to the flight and two weeks prior to the flight respectively, were not sufficiently connected to the flight, which was actually a result of the pseudo count, the Mason, Ohio bank robbery. So you're saying when he was fleeing, it was like he only knew there was one devil after him, not all three of them? Well, that's correct, and that's all the record would indicate. He'd forgotten about the first two? Well, it's not necessarily that he forgot about the first two. The question is, what does the evidence, what does the record or the evidence indicate that he was fleeing from? And I'll go back to Sutherland. They had this GPS on him, right? That's correct. And so they might well have chased him even if he never robbed the bank in Mason. Truth be told, that might have occurred. The issue here, though, is what we're talking about is the fifth prong, and that's the prong that all we're talking about is what was the defendant's state of mind at the time he was fleeing? Quite frankly, the information about whether or not they could have been looking for him, even if he hadn't robbed the bank, quite frankly is... So it's a state of mind question? It's a state of mind question, is what that says. So if he says, I was sure I got away with those first two, then he's good, but if his conscience was still troubling him, then maybe he wasn't? Your Honor, I think the issue has to be does the evidence, is there evidence that suggests that the flight following, immediately essentially following, or hours following the Mason, Ohio robbery, does the evidence suggest that he was also specifically fleeing in connection with the Lansing bank robberies? That's what the issue here is. And while they might have had a tracker in his vehicle, there's no evidence on the record that Mr. Clark was aware of that. I know that the evidence on the record indicates that warrants had been issued against Mr. Clark, but there is no evidence on the record that Mr. Clark was aware of those two specific warrants that were issued against him in Michigan. Now one of the things that you look at in the argument that I saw in the government's response brief, they talk about that Mr. Clark knew that there was warrants for the Michigan robberies. And the evidence, quite frankly, does not actually bear that out. If you go through the entire context of the pre-sentence report, there's nothing in the pre-sentence report that indicates that he knew that there was warrants had been issued for him in Michigan. During the sentencing transcript, which is also referenced by the government in this case, there's a reference that he says that he knew that there was, the argument was made by the government that he said, I knew that there was warrants out for my arrest. Now, two prongs with that. That is nowhere in the record anywhere in this court, other than the statement that was made by the Assistant United States Attorney at the sentencing hearing. And second, the statement that he quoted was, I didn't even know how many warrants I had on me at that point. Why is that important? Well, it's important because when you do look at the pre-sentence report, and the pre-sentence report does indicate that yes, there were warrants, active warrants out for him. Those warrants were not, does not indicate that he knew that the warrants were for Michigan, but they're for, correct, paragraph 96 and paragraph 97 of the pre-sentence report. So how do you, I mean, the district judge made a finding, a fact, that it was just implausible to think that when he was fleeing, he wasn't sort of, the gestalt of the situation wasn't that he was fleeing from everything, being caught for anything, at least anything recently. But I guess if you follow that, then you'd say that whenever a felon is fleeing, they're fleeing from any open warrants, anything that they could possibly be taken in for. But isn't there a certain truth to that? Well, I think, again, we have to go through the guidance that we received in Sutherland, and I use Sutherland. Sutherland is the Fifth Circuit case. Thank you. That the Sixth Circuit used in Dial. So that's why I rely on Sutherland, because I know Dial, I believe, is unpublished, but we still have referenced it in an opinion. In Sutherland, again, the same argument, Your Honor, that you're making here could also be made in the Sutherland case, which was he obviously knew that he had robbed a bank two months before. He sees a police car, and he's fleeing from that police because of both the bank robbery that he knew he committed two months prior, and the other crimes that he was committing just at that time. The upshot of this would be, though, that if he had not robbed the bank in Mason, and the GPS and the authorities being after him, you should not have applied any of these. He can just go hell for leather and run over this poor woman. Well, I'm not justifying him running over the woman. I'm applying the evidence here. The way the enhancements work is there has to be the nexus. If he hadn't had the Mason burial bank robbery, I understand it. But had he not had the robbery in Mason, the argument would have been, what is he fleeing from at that point? Now, again, quite frankly, Your Honor, to some extent the same argument could be made. However, what we do have is I believe that the Mason robbery, for lack of a better word, is almost to extend an intervening act because that's clearly what he is running from because that's the robbery that happened that day. What is the upshot of the best of your argument here? That is, he got a level 32 for if you just focused on the pseudo count. You could have done that. Is that correct? Correct. So to get to 32, and then he gets three at the end, but would he still get the half point for grouping for the other two robberies? No, what happens, Your Honor, is this, is that because he got hit with eight enhancements for all three robberies, he received three points for the grouping because all three robberies were at 32. He would have still gotten something, wouldn't he? He would have been at 31. As I understood it, he would get one plus a half plus a half. Correct. Get 34. Correct. We're arguing over one level. Right. So if you win, we would remand, we would say you're at 34, Judge Maloney could decide what to do with that then, right? He could vary if he wanted to. That's correct. This whole argument, I mean, it's over one level and it's a compound of the grouping rules and this. The second argument is what I would consider a double counting argument. And the point there is essentially because of the nature of the grouping rules and how they applied with all these enhancements, he is basically getting, in a way, hit twice for the exact same conduct. I think as I wrote in the brief, Mr. Clark could have engaged in a high speed chase resulting in an injury to a person after the Lansing accident, could have engaged in a high speed chase resulting in an injury to a person in the Kalamazoo accident, and could have done the same that he did in the Mason accident. And his guideline score, his offense level, would be exactly the same as it is right now. And so the issue is that he's getting penalized. Granted, it's one level and it's kind of because of a result of the grouping rules. But he is actually getting, the way I said, he's almost getting triple penalized for the exact same conduct that doesn't affect any additional victims, doesn't affect any additional reckless or put any additional people in danger. But it is, it would be, if you lost on the first argument, again, it would be legitimate to attach it to the first robbery alone. You don't have to do it to the, that's why there's one sense it's not exactly the same conduct because it's fleeing from this robbery, fleeing from this robbery, fleeing from this robbery. I would agree, I would agree to an extent, I guess with my argument, well, the, I guess what I'm focusing on is, there's no additional conduct, there's no additional injury, there's no additional behavior that we are trying to dissuade. I think the government's argument is, well, the behavior we're trying to dissuade is don't rob three banks. And that's, their argument is that's what he's getting hit for. The, I think this is one of those unique perspectives where because the way the grouping rules work and because the way this enhancement, the enhancements application work, he is, in fact, getting penalized effectively three times for the exact same conduct. Thank you. All right, thank you. May it please the court, my name is Timothy Verhey, I'm a prosecutor in the Western District of Michigan and I'm sure everybody knows that this case started in my district and ended almost exactly two years ago, about five miles from where we are right now, where Interstate 75 crosses the Ohio River into Kentucky. And as the court, I'm sure, knows, that's where the Florence police were chasing Jermaine Clark and he engaged in this high-speed chase and then crashed the car into the nurse when he took the Florence exit. Well, the reason, the only reason that the Florence police knew to be chasing Mr. Clark on July 24th was because the FBI in Michigan contacted them and said we're tracking this car right now, it's got built-in GPS, we've got these Michigan warrants for him for these two robberies up in Michigan, he's in your jurisdiction, please apprehend him. So there's a real strong nexus between what happened up in Michigan and what happened in Kentucky. And the Dial case that we've been talking about leads to this factual finding, Judge White, that you already noted that Judge Maloney made, which is subject to clear error review, that since Clark didn't bother to wear a mask or disguise himself during either of the Michigan robberies, he had to know that the police would be after him. It wasn't a whodunit, it was a case where he was on video, the video was on TV, everybody knew who it was, the only question is where is this guy? So that's the crucial thing that the Dial case tells a district court to focus on, what's in the defendant's mind as he's being chased by the police, and Judge Maloney said he had to know he was being chased by the FBI for the Michigan bank robberies. Sure, he was being chased also for the Mason robbery, but let's not forget that the Mason authorities had no idea who this guy was until they talked to the FBI in Michigan and they compared notes and put together the facts and they realized it was the same guy. So what about, I mean I understand that sort of scoring in a vacuum, and I understand that you follow the rules and it tells you that there are these units that you consider, but you do have a situation where the reality is that he is getting bumped up three times for one chase, and it would have been the exact same had there been three chases. Let me say why I disagree with you about that. The first thing is, as I think everybody knows, each bank robbery is a separate bucket and you put the points into these separate buckets, and each one of these was 32 after the pre-sentence investigator did that. Now, he would have had a score of 32 if he had only committed one robbery. The only reason he got those three extra points is because he committed not one, but three robberies. So going to the double-counting rule, which we just by happenstance cited Moon, which I know you wrote, Judge Clay, but Moon says the general principle that if precisely the same conduct is used more than once to bump up a defendant's sentence, then you've got a double-counting violation. Well, here you don't have precisely the same conduct. You've got the car chase and injury plus not one, but three robberies. So he would have been at level 32 if he'd only committed one robbery. He's at level 35 because he committed three robberies. That's all different conduct. Right, but he's not at level 35 because he committed three robberies. He's at level 35 because he committed two other robberies. And in scoring those, you are accrediting the chase. If you just counted the robberies, as Judge Bob said, he'd only get a half a point, right? Correct. Okay. Now, the question is a good one. It's not precisely the one that was briefed, but I think I do have an answer for you. Okay. Going back to Moon, you know, you have to have precisely the same conduct that counts more than once, then you've got a problem. Here, because we satisfied the nexus test of Dial or Sutherland or whatever rule you want to call it, we satisfied Judge Maloney that the nexus between the Michigan robberies and that car chase and crash counted because those facts were different than the Ohio robberies. So, for example, what do we have with the Michigan robbery? We've got a Lansing Bank robbery. We've got him using this Dodge Charger as a getaway car. We've got the fact that the FBI was able to figure out what precise Dodge Charger it was so they could get the GPS info. We have the fact that they got a federal warrant two days before the chase, and then on the day of the chase, they're actually pinging this car as it's going around the country. So that's one set of facts that links, let's say, the Lansing robbery to the car chase in Kentucky. We have different facts that link the Kalamazoo robbery to the same car chase in Kentucky. Now, we've got the Kalamazoo robbery. He happened to use the same car, but it was a different day, a different location. We link that to what happened in Kentucky. That's different than the facts that happened in Mason. I mean, Mason was the same day. They had no idea who it was at the time it happened. The only way they found out was by conferring with the FBI after they put out this bulletin. And so you've got all these different facts. What you call the they here, effectively, did the Mason police ever chase him, or was it just the FBI direct to Florence once they heard of the Mason robbery? Well, as the pre-sentence report tells us, Mason knew they had a robbery, so they put out a bulletin. And these law enforcement agencies see these, and so the Michigan FBI went Mason to the FBI to Florence, not Mason to Florence. They called up Mason, compared notes quickly, and they said, oh, this must be the same guy because his car was in Mason, according to the ping info. And then I think they both got on the horn to Florence. Any reason the FBI, if they had GPS pinging, didn't know he was in Florence anyway, that he might have just been on his way to a beach in Florida? They were tracking him, but there's a time lag, I guess. It's not instantaneous. It became more urgent when they learned of the other robbery. Right. So just to finish answering your question, Judge White, I think you're right to say, well, you shouldn't be able to come back and whack this guy under multiple counts. But my response would be, we didn't because we had to show Judge Maloney different facts in this case. But I think you can take some comfort in the fact that if you prove what happened here, you're not going to be announcing a rule that says, well, anytime somebody gets chased for multiple robberies, they're always going to get dinged for multiple counts. Because, for example, Sutherland is an example where a guy was chased after two crimes, and it didn't count against him twice because there wasn't that linkage. If you recall the facts of Sutherland, that was a guy who committed a bank robbery several days before he engaged in drug dealing. And the cops knew he was dealing drugs and started to chase him for that and he caused problems and got a 3C1.1 enhancement in that chase. And the Sutherland court rejected the District Court's decision to apply the car chase to both crimes, the bank robbery and the drug dealing. And I think that was appropriate because you couldn't really link it up to the bank robbery. We did take the trouble here to link it up to our bank robberies. And so I think once you have that, you don't have a double-counting problem. You would if you just willy-nilly applied it where somebody is being chased for multiple crimes. I mean, just because it's the same car doesn't mean it's linked. What links it up, the fact that the FBI had linked it up? Well, I guess what I'm trying to say is you don't, according to the rule that you stated in these cases like Moon that says the same conduct can't be used to increase somebody's sentence multiple times, here we didn't have exactly the same conduct. We had robbery one and how the car related to robbery one. Robbery two and how the car related to robbery two. But he's not getting it for taking the car. He's getting it for his driving during the third robbery. Well, actually he used the same car for all three robberies. No, but you don't get an enhancement for using a stolen car. You get an enhancement for the reckless driving and for the injury. Right. So it just happens to be the same car. I'm not trying to say that's the be-all and end-all here. But what I'm trying to say. What I'm trying to follow is you're talking about conduct relating to the first two robberies and I'm not following you on why that's relevant when applying the Moon test about the same conduct causing the enhancements. It's the reckless driving and the causing injury that's the enhancement causing conduct. Right. So I'm not sure that I'm seeing how this is different for each robbery. Okay. Well, hopefully we're not just talking past each other. I think I understand what you mean. What is it that makes this not double counting? Because you're right, there's three robberies and only one chase. So my first answer would be there's three robberies and that is a completely different thing that in addition to what he did in Kentucky earns him these extra points that he's mad about. Yes. Okay. The second thing is each of these facts that I say were appropriately used to satisfy this Nexus test that Dial requires were different. And I don't want to say them all over again, but they're different days. The GPS linked the robber to Kentucky. There was a warrant. We're actually looking for him and trying to catch him. Every time that there's a different fact that links the Michigan robberies to the car chase in Kentucky, that makes it outside the double counting rule, I say. And it's different, for example, from what happened in Mason, Ohio. Because there wasn't all that stuff going on to link Mason, Ohio to this chase. It just happened to be the same day and it was a little closer to Florence. So that one should have been counted. Even Mr. Bartish agrees with that. But the point I guess I'm trying to make ultimately is I can point to a lot of different facts. You're almost saying that maybe he wasn't even fleeing from the Mason one. That given the facts, what he was really fleeing from was the Michigan robber. I don't think I can pass that with a straight face because that's the one he just did. He knew the police were chasing him in Kentucky for some reason. Keep in mind that the Dial case doesn't require that the case at issue caused the chase. It just has to be somehow related. It all comes from this 1B1.3 relevant conduct rule that says the offense of conviction has to somehow be involved in whatever it is you're trying to punish him for. So he did say to the FBI that he knew he was being chased out of the Michigan statute. Is there any time nexus? Can you have relevant conduct that occurs? Because we're saying the conduct is relevant to the Michigan offenses. Can you have relevant conduct that occurs like six months later triggered by another offense? Well, I think there probably is an outer limit to it. The only thing that Dial and Sutherland says is first you look at what you can prove the defendant was thinking. And Judge Maloney ruled what he thought he was thinking. And then as a secondary inquiry Dial and Sutherland say, also look at geographic and temporal proximity. So if it's something years later, maybe we wouldn't be able to show there's a nexus. Here I think we were able to show that. But, yeah, I suppose, though, on the other hand, there could be a 10-year-old case, it's the only thing he's ever done, and he gets chased. You would be able to show that. Especially if he had just been put on America's Most Wanted two hours earlier. Right. Well, I see I'm out of time, and I don't have anything else I'm anxious to tell you unless you have more questions for me. Well, you know, a lot of these questions, I would think, are getting at what the defendant's state of mind might have been. He knows he just committed the Mason robbery, and so it's most likely that he would think that he's being chased on account of the offense he just committed, not the prior ones in Michigan. What would you say to that? Well, I've never been a bank robber, but I would remember all the robberies I'd committed if the police were chasing me. One was two weeks before. That's not that long. The oldest one was less than a month before. So, sure, he might think, yeah, they are on to me for Mason, but I have a hard time believing that he would have thought, well, that's the only thing that they're chasing me for. That's pretty much what the district court said, did it not? Right. If he'd been wearing a mask and, you know, pulled the perfect crime up there, maybe he wouldn't, but he didn't bother to disguise himself up in Michigan. All right. Well, thank you for your time. Thank you. Thank you. I'll be as brief as I can. I've got four minutes, but I'll address the nexus argument first. I think, again, for the court determining the state of mind, I think a lot of the factors that the government has referred to, the tracker, the FBI communicating with Florence and Mason, the fact that the FBI was looking for him, I don't believe that that, quite frankly, is relevant to the question we're talking about, which is the state of mind of Mr. Clark at the time he was fleeing. For that to be relevant, there would have to be some evidence on the record that I think Mr. Clark was aware that all this stuff was happening in the background. And on the record that's presented before this court, there is no such evidence. Again, I know that the report refers to him talking about he was aware that there were warrants out for his arrest. I would stress that that is not in the record. That is a summation that was made during the sentencing transcript by the government. But it's nowhere in the PSR. It's nowhere in the plea transcript. It's nowhere as a statement other than argument that was made during the sentencing hearing. And again, the specific language was I was aware that if we're going to use that language, the statement was I didn't know how many warrants I had out on me. And again, we do know from the record that he had warrants for Ohio robberies, parole violations. So I don't believe, again, the nexus requirement is met. And I would again refer you to Sutherland, which is very factually similar. The difference would be that that bank robbery happened two months prior, but in Fort Worth where Sutherland was apprehended. In our case, we had bank robberies that occurred one month and two weeks prior, however, occurred a couple hundred miles away from where Mr. Clark was ultimately apprehended. So I don't believe the temporal proximity or the geographical proximity weighs in favor of. There's nothing in the record about why he left town, that is why he left Michigan and so on. There is, other than he says that, he might say that he did, but there's nothing in the record that says why he did. Although we know that the warrants had only come out a couple of days earlier and the girlfriend had only told people about the car being stolen a couple of days earlier. That would have been after he had left in the factual thing. So again, my point is the information that the government cites that, hey, this is why it's nexus, they have to show that not only that that information is accurate, but that Mr. Clark knew about that information because this all is about his state of mind. The second argument I'll address would be the double counting. I know the government and your Honor, Judge White, we were talking past each other and I could see why because there isn't a good explanation for the double counting argument that the government has. There is no distinguishable conduct. The eight levels of enhancement that he received, that Mr. Clark received, was for one course of conduct and one course of conduct only. Whatever verbal gymnastics we go through to try to say, explain how the robberies are different, there's no verbal gymnastics that exists to explain how the conduct that is the result of the enhancement is different. And again, it's the nature, the grouping rules. He is getting punished for distinct conduct because he's getting punished under the grouping rules. However, he should only be getting two levels for that conduct. What do you say about the argument that, well, that's what the guidelines want you to do because that's what they tell you to do? I think the argument, but they also tell you that the purpose of its double counting, it has to have some purpose of a distinct conduct. There has to be a reason why we are hitting the person multiple times or hitting them multiple times for the same exact conduct. In a lot of these cases, you have guidelines. A person might be engaging in the same type of conduct and there might be two guidelines that this particular course of conduct addresses. Well, the sentencing guidelines specifically indicated that. They said the conduct is because, one, they're trying to protect a certain vulnerable victim and they're trying to deter conduct of spreading the information. But in this case, there's no discernible reason to hit Jermaine Clark three times for reckless endangerment and causing a physical injury to one victim. The reason, if we don't buy the nexus argument, that you legitimately could count this robbery was worth 32 because it's a bad robbery with a chase and an injury. This robbery is worth 32. This one is worth 32. And then the grouping rules are what gets you to 35. I believe your side has to say, well, only this one is worth 32. These other two robberies are just not so bad. But that is the argument we're making because the other two robberies... We agree what your argument is, whether we buy it or not. The other two robberies aren't as bad because... Because we've already taken into account. The third robbery by far is the worst one. You're saying that the punishment shouldn't be so bad. The robbery may be equally bad when you focus on the robbery. But you're saying it really isn't because... Not because it's not bad. It's because you've already hit him once for it. Correct. If this was a case where he was... I'm not arguing that he shouldn't have received any enhancement for the conduct. He's receiving it. I'm saying we're overdoing it for him for the same enhancement on the two previous robberies in which these activities weren't involved in. Thank you. Thank you very much and the case shall be submitted.